## STATE v. MILLING.

1. CHARGE ON FACTS.—In asking a witness whether he had ever seen the body of any one who died from the effects of calomel, except the the deceased, the trial judge did not intimate to the jury his opinion on the question at issue, to wit, whether the deceased had died from the effects of calomel.
2. CHARGING JURIES—CIRCUMSTANTIAL EVIDENCE.—The trial judge charged the jury that the principal rules by which they should be "guided in hearing circumstantial evidence were, 1, that the circumstances must be proved to your entire satisfaction ; and 2, when the circumstances are established, they must point conclusively to the person charged and must be inconsistent with any other reasonable hypothesis." *Held*, no error, a more complete statement of the rules not having been requested.
3. GENERAL EXCEPTIONS to a charge, alleging it to be upon the facts of the case, but not specifying particulars of error, need not be considered.
4. CHARGE ON FACTS.—A defendant being on trial on a charge of murder committed by administering poison, the trial judge, in stating to the jury as an abstract proposition, that administering poison implies design—in stating the testimony of the State to prove motive—in sub-

mitting it to the jury to say whether "these facts" would amount to a motive—did not charge upon the facts within the inhibition of the constitution.

5. IBID.—After stating the testimony for the State, the judge said to the jury that from that testimony they were called upon to find the defenant guilty. *Held*, not to involve an expression of the judge's opinion, but was a mere statement of what the prosecution claimed.

6. IBID.—Where the judge stated the testimony for both sides only in substance, and said, after stating the testimony for defendant, that such was the testimony in substance for the defence, he committed no error, even though there was other evidence; and an incomplete statement in a charge is not to be corrected by appeal.

7. CIRCUMSTANTIAL EVIDENCE.—A party may be convicted on circumstantial evidence, and it is often necessary to resort to that species of evidence.

Before HUDSON, J., Chester, June, 1891.

This was an indictment against Martha Milling for the murder of her husband in April, 1891. The judge charged the jury as follows:

*Gentlemen of the Jury :* You have heard the testimony in this case and the argument of counsel upon it, and I have now only to explain to you the law applicable to the case, when you will be in possession fully of the question at issue, and the explanation of the law amounts to very little in a case of this kind in so far as assisting the jury is concerned.

Murder is defined to be the killing of a human being with malice aforethought, either expressed or implied. Expressed malice is where the deed is done with a sedate mind and formed design, and attended by external circumstances going to show the intention. Implied malice is where we have not these external circumstances and have to go by the circumstances attending the killing. Another grade of felonious homicide is manslaughter, which is the killing of a human being upon sudden heat and passion and upon sufficient legal provocation. Homicide is excusable when it is committed in the defence of the person, either to save the life of the innocent party assaulted, or at least to save him from grievous bodily harm. Now, in this particular case it is not necessary really that I should do more than define the

crime of murder, because there is no question here about manslaughter; no question here about self-defence; no issue of that kind raised either in the testimony or in the argument. The charge is murder; the plea is "not guilty," and the charge is that the murder was done wilfully and maliciously, by deliberately administering poison.

If it be a fact that death ensued from wilfully, knowingly, and deliberately administering poison, then if you have proof of that, you have the external circumstances going to show the intention, and you have evidence of its being done with a sedate and deliberate mind and by design, you have the proof of murder of a very revolting and frightful nature; because while one may defend himself or herself from the open attack of the assailant, meeting and repelling force by force, yet against the secret administering of poison it is very difficult, ordinarily, for one to defend himself or herself. The question in this case for you is simply a question of fact. Is the charge here of murder by the malicious, wilful poisoning of the deceased by the defendant established? You have been told by the counsel on both sides that it is necessary that the charge be established by evidence satisfying you beyond a reasonable doubt. The defendant is presumed to be innocent until she is proved to be guilty; that presumption follows throughout the trial, and it is only after all the evidence is in and you have passed upon the facts that the presumption can be removed.

Evidence is positive or circumstantial, and by positive evidence we mean the testimony of eye-witnesses to the fact. By circumstantial evidence we mean the testimony of eye-witnesses, not to the fact to be proved, to wit, details of the manner of death, but to facts going to establish that fact, and the principal rule by which you are to be guided in hearing circumstantial evidence is: 1st, that the circumstances must be proved to your entire satisfaction; and 2nd, when the circumstances are established, that they must point conclusively to the person charged, and must be inconsistent with any other reasonable hypothesis. We must rely upon circumstantial evidence in order to administer the law. We could not transact the daily affairs of life, we couldn't live and move and have our business socially, unless we depended on cir-

cumstantial evidence, and we are forced to rely upon circumstantial evidence in order to detect crime, because persons who contemplate the commission of crime don't aim to be discovered. It is not their purpose to be seen; their object is ordinarily secrecy; their purpose is to cover up their tracks, not to be seen by their fellow-man, and we must therefore resort to circumstantial evidence in order to ascertain the guilty party. As I have said, you must be careful, 1st, in having the circumstances fully established, and when the circumstances are fully established, then they must point conclusively to the guilt of the party charged.

Now, I cannot comment upon the testimony. I cannot aid you in solving this question of fact by charging upon the facts. I am allowed by law only to explain the law, and I can state the facts in so far as it is necessary to throw light upon the principles of law that I have announced to you. I don't pretend to announce to you that any one fact is proved, because that is a question for you to determine, but to state to you the current of the testimony in behalf of the State and the argument of the solicitor, based upon what he claims to be the testimony on the one hand, and the argument of the counsel for the defence upon the testimony for the defence, that is, the points made.

Ordinarily we look for a motive when crime is committed, but we don't always find it. It is contended by the State's attorney in this case that a motive has been discovered in the testimony that you have heard upon the stand, to wit, that this wife, who he claims to be strong and healthy and vigorous, became tired of her older and weak husband; that the testimony shows that he was a small, weakly, sickly man, while she was a strong, healthy, vigorous woman; that he was absent from her a great deal, and that in the meantime she contracted a liking for others, and that she desired to get her husband out of the way as an encumbrance. I say it is contended by the counsel for the State that the testimony shows a motive. Whether that testimony does show that these facts would amount to a motive or not, is a question of fact for you.

The next thing is that she had the means, it is contended by the State's attorney, to do the deed, to wit, several bottles of cal-

omel. Whether she procured it or not is a question for you, and whether she procured it for that purpose, or whether she procured it for these persons, as she said, is a question of fact for you. It is contended by the State's attorney that the deceased died from overdoses of calomel, mercury. In order to establish that he has introduced the testimony of the attending physician, and the testimony of that physician who attended him through his illness and assisted in making the autopsy after death, which you have heard. He testified that in his opinion death was caused by the administering of a mercurial compound, and that the salivation brought on the weakness and prostration which destroyed the appetite and ability to assimilate food. In other words, produced death. You have heard his testimony. I don't state whether any of that testimony is a fact or not. He has given you his opinion that he died from the effect of mercury. You have the testimony of the other physician who assisted in the autopsy, and you have before you the certificate which he signed with the physician in chief. Now, from all this testimony you are called on to find that she wilfully, knowingly, maliciously administered to her husband this poison for the purpose of putting him out of her way, by taking his life, getting rid of him, and that therefore she is guilty of the crime of murder, and so you are called on to find such a verdict.

Now, the defendant goes upon the stand and asserts her innocence; other witnesses go on the stand and testify to the kind manner in which she treated her husband during his illness. The defendant and her mother say that the 4 bottles were bought for her mother. The defendant says that the first bottle was for Hattie somebody, and the other witnesses testified as to her good behavior. Well, that is the substance of the testimony for the defence. You are to determine from this testimony whether you will find the defendant guilty or not. If you are satisfied beyond a reasonable doubt that she wilfully and maliciously administered the calomel to her husband with intent to kill him, and that she did do it, why, as a matter of course, your verdict must be guilty. If you are not fully satisfied, if you entertain any doubt, she gets the benefit of the doubt and she is clear. If you are satisfied from the evidence for the defence that she is innocent, your ver-

dict must be not guilty. When I speak of a reasonable doubt, I mean a doubt not whimsical, not fanciful, but doubt for which a reason can be given.

As I have said, this case turns upon circumstantial evidence, and if the circumstances are sufficient to satisfy you, you will find a verdict accordingly. We can act upon circumstantial evidence in the gravest issues, otherwise our lives, our property, would not be safe unless we could rely upon circumstantial evidence in the very gravest issues which can be submitted. If we could not rely upon circumstantial evidence, it is very evident that he who succeeded in being perfectly secret about a crime would escape, for the circumstances which led to the detection of the crime would not be relied on by the jury. If the proof in this case is not sufficient to convince you of the guilt of the defendant, why, of course, she must be acquitted. If the proof in the case convinces you beyond a reasonable doubt, you will bring in a verdict of guilty. Take the record.

The jury returned the following verdict: "Guilty, recommended to the mercy of the court," whereupon the sentence of death was pronounced against the prisoner.

The defendant appealed on the following grounds:

1. For that his honor erred in asking Dr. Lyle, a witness for the defence, while upon the stand, a question as follows: "Have you ever seen the body of one who died from calomel except this one?"

2. For that his honor erred in charging the jury upon matters of fact by indicating plainly the opinion of the court that the prisoner should be convicted, so as to bias their judgment and influence and control the verdict of the jury against the prisoner.

3. For that his honor erred in charging the jury as follows: "If it be a fact that death ensued from wilfully, knowingly, and deliberately administering poison, then if you have proof of that, you have the external circumstances going to show the intention, and you have evidence of its being done with a sedate and deliberate mind and by design; you have the proof of murder of a very revolting and frightful nature, because while one may defend himself or herself from the open attack of the assailant,

meeting and repelling force by force, yet against the secret administering of poison it is very difficult, ordinarily, for one to defend himself or herself"—his honor thereby in effect not only invading the exclusive province of the jury to determine the facts from the evidence, but tending to prejudice their minds against the prisoner, and constraining the jury to deny to her an impartial and unbiassed consideration of her plea of "not guilty."

4. For that his honor erred in charging the rules of circumstantial evidence, in that he omitted to state that the circumstances must be consistent with each other, and that the circumstances must to a moral certainty actually exclude every hypothesis but the one proposed to be proved.

5. For that his honor erred in charging the jury of follows: "Now, ordinarily we look for a motive when a crime is committed, but we don't always find it. It is contended by the State's attorney in this case that a motive has been discovered in the testimony that you have heard upon the stand, to wit, that the wife, who he claims to be strong and healthy and vigorous, became tired of her older and weak husband; that the testimony shows that he was a small, weakly, sickly man, while she was a strong, healthy, vigorous woman; that he was absent from her a great deal and that in the meantime she contracted a liking for others, and that she desired to get her husband out of the way as an encumbrance"—his honor thereby assuming, and by implication stating to the jury, that a crime had been committed; whereas, it is respectfully submitted, that whether or not there was a crime is a question of fact for the exclusive determination of the jury.

6. For that his honor erred in charging the jury as follows: "Now, whether that testimony does show that these facts would amount to a motive or not, is a question of fact for you," thereby stating the testimony of the State's witnesses to be "*facts*," whereas, it is respectfully submitted, that the question as to whether such testimony is true or not is one for the determination of the jury, and is totally beyond the province of the court.

7. For that his honor erred in charging the jury on the facts as follows, after stating to them "the current of the testimony in behalf of the State": "Now, from all this testimony you are called on to find that she wilfully, knowingly, maliciously ad-

ministered to her husband this poison for the purpose of putting him out of her way by taking his life, getting rid of him, and that therefore she is guilty of the crime of murder, and so you are called on to find such a verdict"—his honor thereby not only indicating his opinion of the facts to the jury, but directing them that they were "called on" to find the defendant guilty.

8. For that his honor erred in charging the jury as follows: "Now, the defendant goes upon the stand and asserts her innocence; other witnesses go on the stand and testify to the kind manner in which she treated her husband during his illness. The defendant and her mother say that the 4 bottles were bought for her mother. The defendant says that the first bottle was for Hattie somebody, and the other witnesses testified to her good behavior. Well, gentlemen, that is the substance of the testimony for the defence," thereby charging upon the facts and thus indicating to the jury that this was the whole defence offered, and constraining them to regard it as such; whereas, it is respectfully submitted, that the testimony shows that some of the most important matters of defence were totally omitted by his honor in this summary.

9. For that his honor erred in charging the jury as follows: "As I have said, this case turns upon circumstantial evidence, and if the circumstances are sufficient to satisfy you, you will find a verdict accordingly. We can act upon circumstantial evidence in the gravest issues, otherwise our lives, our property, would not be safe unless we could rely upon circumstantial evidence in the very gravest issues which can be submitted. If we could not rely upon circumstantial evidence, it is very evident that he who succeeded in being perfectly secret about a crime would escape, for the circumstances which led to the detection of the crime would not be relied on by the jury"—his honor thereby charging upon the facts by intimating to the jury his opinion as to the sufficiency of the testimony, so as to influence and control their verdict against the prisoner.

10. For that his honor erred in not leaving to the jury the exclusive determination of the facts, without intimating to them the opinion of the court as to the guilt of the prisoner.

11. For that his honor erred in the whole tenor, manner, and

effect of the charge, in that he did indicate thereby to the jury his opinion of the facts, and did constrain the jury to adopt as their conclusion the opinion of the court, contrary to the requirements of the constitution of this State.

*Mr. W. A. Barber*, for appellant.

*Mr. McDonald*, solicitor, contra.

January 7, 1892.   The opinion of the court was delivered by MR. CHIEF JUSTICE MCIVER.   The appellant was indicted for and convicted of the murder of her husband, the allegation on the part of the State being that the death was caused by poison administered in the form of overdoses of calomel.   From the judgment rendered on the verdict, the defendant appeals upon the several grounds set out in the record, in all of which, except the first and fourth, the error imputed to the Circuit Judge is in violating the constitutional provision forbidding a judge from charging a jury upon the facts.

The error alleged in the first ground of appeal is in asking Dr. Lyle, a witness for the defence while upon the stand, the following question : "Have you ever seen the body of one who died from calomel, except this one ?" whereby it is claimed that the judge conveyed to the jury the impression that, in his opinion, the deceased had died from the effects of overdoses of calomel.   This witness had never seen the deceased while alive, but having assisted Dr. Murphy in making the post mortem examination, was called to rebut the theory upon which the case for the State rested, by suggesting that from the appearances presented by the examination of the stomach and bowels of the deceased, he might have died from natural causes—a disease known as consumption of the bowels.   It was therefore quite natural that questions should be put to him calculated to test the extent of his experience; and what more natural than to ask whether he had ever seen the body of any one who had died from the cause to which the death of the deceased had been attributed by the other physician.   The point of the objection, however, seems to rest upon the last three words of the question—"except

this one''—which, it is claimed, were sufficient to indicate that the judge who propounded the question had reached the conclusion that the deceased had died from overdoses of calomel. It does not seem to us that this necessarily followed, for a person who had reached no conclusion of his own upon the subject might very well have framed the question in the way in which it was propounded, having reference to what had previously been testified to by the other physician, and not to any opinion of his own. But even if the form of the question could be regarded as sufficient to indicate the judge's own opinion as to the cause of the death, that would not constitute such an error of law as would warrant this court in reversing the judgment. *State* v. *Atkinson*, 33 S. C., 100.

The fourth ground of appeal imputes error to the Circuit Judge in stating in the charge to the jury the rules of law in reference to circumstantial evidence, ''in that he omitted to state that the circumstances must be consistent with each other, and that the circumstances must to a moral certainty actually exclude every hypothesis but the one proposed to be proved.'' It does not appear that the judge was requested to charge any particular propositions of law in reference to circumstantial evidence, and therefore an omission to state *any* or *all* the rules in regard to circumstantial evidence cannot be regarded as reversible error. We must therefore confine our attention to the single particular in which error is imputed. It will be observed that the judge did not undertake to state to the jury all of the rules upon the subject, but after defining the nature of circumstantial evidence, he used this language: ''The principal rule by which you are to be guided in hearing circumstantial evidence is, 1st, that the circumstances must be proved to your entire satisfaction; and 2nd, when the circumstances are established, that they must point conclusively to the person charged, and must be inconsistent with any other reasonable hypothesis.'' We see no real practical difference between these words and those which by the exception it is claimed he ought to have used. It is quite certain that the language actually used by the Circuit Judge conveys no erroneous legal proposition, and if it was supposed that the rules of law were incompletely or insufficiently stated, there should

have been a request to charge such omitted rule. So that in no view of the matter can this exception be sustained.

The remaining exceptions in different forms raise the same question, viz., whether the Circuit Judge in his charge to the jury has violated section 26, of art. IV., of the Constitution. Inasmuch as we think the judge's charge is quite sufficient for its own vindication, we trust that it, together with the exceptions, will be set out in full in the report of the case. We, however, propose to notice very briefly the several exceptions. The second is manifestly too general in its character to require further notice. In the third, the point in which the constitutional provision is claimed to have been violated is in the comments of the judge as to the alleged agency—poison—by which death was caused, which of itself shows deliberation; but there is not a word of comment as to the testimony. On the contrary, the language relied on as objectionable begins hypothetically "if it be a fact," &c., and the jury having been instructed throughout the charge that every question of fact was for them exclusively, we see nothing whatever objectionable in the language upon which this ground is based.

As to the fifth ground, the Circuit Judge did no more than to call the attention of the jury to the common sense principle that in an investigation of any charge of crime it is but natural to inquire whether the person charged had any motive to commit the crime of which he is accused, and to state to the jury what circumstances were relied upon by the prosecuting officer to establish a motive. How this can be regarded as any violation of the constitutional provision, we are utterly at a loss to conceive. There was not a word said which would even tend to indicate what was the judge's opinion as to whether a motive was established or not. On the contrary, he complied rigidly with the constitutional provision which permits him "to state the testimony" by simply narrating the circumstances relied upon by the solicitor to establish a motive. What has just been said applies with equal force to the sixth ground of appeal, though the special objection seems to be that the judge used the term "facts," and thereby indicated his belief that the testimony relied upon to show a motive was true. We do not think that this is a just

inference, as nothing is more common than to instruct the jury to inquire whether the facts as stated by the witnesses are true.

The seventh ground is also based upon the use of certain words—"called on to find"—which it is claimed not only indicated the judge's opinion as to the facts, but also contained a mandate for the jury to find the defendant guilty.

This, as it seems to us, is quite a strained and unnatural construction of the words, "called on to find," and one which we have no idea was placed upon them by the jury. There is no rule better settled than this, that in construing a judge's charge, it must be considered as a whole, and not in detached portions, for it is in fact nothing but a rule of common sense, which the average juror is quite competent to apply. Now, the words specially objected to in this ground of appeal are found in that portion of the charge where the Circuit Judge was stating to the jury what were the circumstances relied upon by the prosecuting officer, and the conclusions which he thought ought to be drawn from them, and at the conclusion of such statement, he said: "Now, from all this testimony you are called on to find," &c., manifestly meaning that the jury were called on, *not* by the judge, but by the prosecuting officer, to find the defendant guilty. And when it is seen that throughout this statement were interspersed instructions that it was for the jury to determine whether the testimony relied upon by the solicitor was true, we are unable to conceive how the jury could have supposed even, that the judge had formed *any* opinion as to the truth of the facts and circumstances relied upon to show the defendant's guilt, much less that he indicated in any way his opinion to the jury.

The eighth ground of appeal imputes error to the Circuit Judge in closing his statement of the testimony for the defence in these words: "That is the substance of the testimony for the defence," whereby it is claimed that he indicated to the jury that there was no other testimony in favor of the defence than that contained in his statement, whereas in fact there was other important testimony which was wholly omitted. Even if the charge upon which this ground of appeal is based were well founded, it would constitute no error of law of which this court could take notice—*State* v. *Jones*, 21 S. C., 596—

where it was held that if the Circuit Judge, in his charge to the jury, misstates the testimony, the proper time and place to correct such misstatements are at the trial, or at most by a motion for a new trial in the Circuit Court. For exceptions alleging misstatements of the testimony present no errors of law; and, upon the same principle, an exception alleging an incomplete statement of the testimony presents no question of law. But we do not think that the charge is well founded. An examination of the charge will show clearly that the Circuit Judge did not undertake to state the whole of the testimony either upon the part of the State or on the part of the defence, but only the *substance* of the testimony.

The ninth ground of appeal imputes error to the Circuit Judge in saying to the jury that a party may be convicted upon circumstantial evidence, and that it is often necessary to resort to that species of evidence. If this be error, then it is one which pervades all of the text books upon the subject of evidence, as well as many decided cases. Surely it cannot be said that a Circuit Judge in laying down a proposition universally accepted as correct both by lawyers and laymen, can be said to have indicated any opinion whatever as to the force and effect of this species of evidence when resorted to in a given case.

The tenth and eleventh grounds of appeal are too general in their character to require any further notice.

The judgment of this court is, that the judgment of the Circuit Court be affirmed, and that the case be remanded to that court for the purpose of having a new day assigned for the execution of the sentence heretofore imposed.