MR. JUSTICE POPE did not sit in this case.

---

STATE v. CANNON.

1. EVIDENCE.—The presence of a person in the house of another may be explained on the trial of a party killing him in that house.
2. IBID.—The fact that defendant was seen several days before near the premises where deceased was shot is competent to show his knowledge of the premises in connection with other circumstances relied on by the State to convict him of the killing.
3. CONFESSION—SUPREME COURT.—Whether a confession made by a defendant suffering much pain, and under the influence of morphine, is free and voluntary, is a question of fact for the Circuit Judge, and cannot be reviewed by this Court.
4. CRIMINAL LAW—ACCOMPLICE.—If two persons enter a house for an unlawful purpose, and during its execution a homicide is committed by one as a probable or natural consequence of the acts done in pursuance of the common design, both are equally guilty.
5. JURY—ADMISSIONS—CRIMINAL LAW.—The jury are the sole judges as to the weight or sufficiency of the admissions or statements of a defendant, as of any other testimony tending to prove the charge against him.
6. CHARGE—CONSTITUTION.—It is a violation of sec. 26 of art. V. of the Constitution of 1895 for a Judge in his charge to state uncontradicted testimony.

Before GARY, J., Spartanburg, December, 1896. Reversed.

Indictment against Chris Cannon for murdering Capt. Blassingame. The following is the charge of the Circuit Judge, omitting the formal part:

Now, you will take first into consideration, did the defendant make a statement which would lead you to believe that he was in the house? Under what circumstances was he in that house? And from the fact that he was there, and the bullet holes appearing in the wall, as detailed here by the witnesses, are you satisfied that a murder was committed in the house, and was the defendant present? If

you find that he was present, was he there alone, or was he
there in concert with another? It is alleged here that the
defendant was not there alone, but that he made a state-
ment charging William Johnson—I believe was the name—
with having done the shooting. I charge you that if there
were two present, and they were acting in concert, it mat-
ters not which one fired the fatal shot. If they were there
to give aid or to render assistance the one to the other, the
law would say in that instance that the hand of one was
the hand of both—all are principals; and an accomplice in
crime is just as guilty in the eyes of the law as the actual
felon. To illustrate to you: If a burglary is being com-
mitted, and "A" stands on the outside and watches while
"B" enters and commits the burglary, while "A" stands
outside and watches near enough to give or render assist-
ance if necessary, he is deemed in the eyes of the law as
principal, and he is held to be just as guilty as is the actual
felon who goes in and commits the robbery. Now, are you
satisfied that this defendant was there present? If he was
there on an unlawful mission, he could not set up the plea
that he acted in self-defense, because the law says before
one can set up the plea that he acted in self-defense he
must be without fault in bringing about the necessity to
kill. So if you find that the deceased, John H. Blassingame,
was there for the purpose of protecting that house, and the
defendant and an accomplice, or the defendant alone, en-
tered the house for the purpose of robbery, and being de-
tected there, undertook to defend themselves, they could
not set up self-defense under that state of affairs, because
they were in fault, evil-doers in the start, in bringing about
the necessity to kill. The plea of self-defense cannot enter
under such a state of facts. Now, what do the circumstances
convince you? You are the sole judges of the facts. The
rule as to circumstantial evidence is this, that each circum-
stance must be consistent one with the other, and must
point so directly to the gult of the accused as not to admit
of any other reasonable hypothesis than that of guilt. That

simply means this, that a circumstance would not be taken as a link in a chain of circumstantial evidence as against "B" when that circumstance points to the guilt of "C," who is not on trial; and a chain of circumstantial evidence is measured by the weakest link in it. To illustrate to you: If a pendulum were suspended by a chain, and in that chain there was a defective link, the strength of that chain would be the strength of the weakest link in it. The chain would hold no more than would the weakest link. Whenever that link broke, the pendulum would fall. And that is the test and measure of circumstantial evidence, that each circumstance must be consistent with some other circumstance, and they must point so directly to the guilt of the accused as to admit of no other reasonable hypothesis than that of guilt. You have heard the witnesses detail the fact that shortly after the shooting was heard in that house, they went in and saw the prostrate form of Capt. Blassingame, and after some information, the policemen proceeded to the house where this boy was staying, to his mother's house, and there found him shot; what does that circumstance satisfy you? If some one else shot him—if the circumstance points to the fact that some one else shot him—gamblers over in Twitty's Grove—that would not be a circumstance to connect him with the murder of Capt. Blassingame, if that circumstance points to the fact that he was shot by some one else; and that is what the law means when it says these circumstances must be consistent one with the other. Do you accept that theory? Or do you accept the theory of the State, that while in that house he resisted, and while resisting, both parties shooting, he fired the fatal shot, and in that encounter got shot himself and retreated to his home? Does that satisfy you that he was in the house? Does that satisfy you that he participated in the murder of Capt. Blassingame—in the killing of Capt. Blassingame? If so, then you would join the circumstances together; and the test is, do they satisfy you beyond a reasonable doubt that the State has made out its

case? Now, whenever the minds of the jury have arrived at that stage—it matters not whether you have come to that conclusion from circumstantial or positive evidence—do the facts satisfy you that the deceased, John H. Blassingame, was murdered, and the defendant did it? Now, if you are satisfied of that fact—it matters not upon what testimony, whether circumstantial or positive—if you are so satisfied, if your minds have arrived at that conclusion, then it would be your duty to find a verdict in accordance with such conclusion.

The defendant was convicted of murder, and appeals.

*Messrs. C. J. Hunt, F. C. Dill,* and *A. M. Boozer,* for appellant, cite: 9 Rich. L., 84; sec. 26, art. V., Con. 1895; 47 S. C., 488.

*Assistant Attorney General Townsend* and *Mr. O. L. Schumpert,* contra. (Oral argument.)

July 12, 1897. The opinion of the Court was delivered by

MR. JUSTICE JONES. Appellant seeks to reverse the judgment imposed upon his conviction under indictment for the murder of John H. Blassingame, committed in Spartanburg city, August 15th, 1896.

1. It is excepted, first, that the Circuit Judge erred in allowing the witness, J. M. Elford, to testify that his house had been broken into on Thursday and again on Saturday before the homicide, which occurred on Sunday. We do not see any error in admitting this testimony. It was merely explanatory of the presence of the deceased in the house of the witness, where he was killed, he having been left in the house to protect it during the absence of the owner, and could not have prejudiced defendant.

2. It is next excepted that there was error in allowing the witness, Otis Dallas, to testify that he saw appellant at or near the place of the homicide on Thursday before the

homicide. When this testimony was offered it was objected to as irrelevant. The Judge remarked that he did not see its relevancy at that stage of the case, but held that it might appear relevant later on. He, therefore, admitted the testimony for the time, and said that if its relevancy was not shown, he would hear a motion to reject it. The matter was not again called to his attention by motion or otherwise. We think, however, that the testimony was relevant as tending to show appellant's acquaintance with the premises, as one of a number of circumstances relied on by the State to show appellant's presence in the house at the time of the homicide.

3. Error is alleged in allowing the witness, Elford, to testify that he and his wife were not at home on Thursday afternoon before the homicide. This was not pressed in argument. The testimony, if relevant, was not prejudicial to appellant.

4. It is urged that there was error in allowing the witnesses, J. W. McAbee and Dr. DeFoix Wilson, to testify as to a statement or a confession by appellant, because the same was not free and voluntary and was made while appellant was suffering great pain and mental anxiety and was also under the influence of morphine. To render a confession admissible in evidence, the trial Judge must be satisfied that it is free and voluntary, but whether a confession is free and voluntary, is a question of fact, necessarily, in the first instance, addressed to the judgment of the trial Judge. In a case at law, this Court has no jurisdiction to reverse the Circuit Court on a question of fact. When a Circuit Judge is satisfied that a confession is free and voluntary, he commits no error of law in admitting it in evidence. See the separate opinion of Chief Justice McIver, in *State* v. *Carson*, 36 S. C., 534. It follows, as a matter of course, that the fact that the appellant, at the time of the alleged confession, was suffering great pain and mental anxiety, or was under the influence of morphine given to relieve him of such pain, presents no question for

the cognizance of this Court. In so far as such facts may be supposed to relate to the question whether the confession was free and voluntary, they have been passed on by the Circuit Judge, and in so far as they relate to the value and weight of the testimony, they have been passed on by the jury.

It is further urged, under the fourth exception, that if the confession was properly admitted in evidence, the Circuit Judge should have charged the jury, that "if they believe the alleged confession or statements of the defendant, and if he went to the house where the homicide was committed with any other person, and that other person did the killing, there being no concert of action or previous arrangement to kill and murder between the accused and the person who did the killing, then, and in such case, they must find the defendant not guilty; and if they have any doubt about who fired the fatal shot, they must give the prisoner the benefit of such doubt." In the first place, there was no request made of the Circuit Judge to so charge, and we have held that a request to charge is necessary as a basis for an exception for mere failure or omission to charge a specific proposition of law. See *State* v. *Haddon*, *ante*, 308. But, in the next place, without other criticism, the proposition contended for is faulty, as it would require the Circuit Judge to assume as a fact that the purpose of going to the house where the homicide occurred was not unlawful, and it fails to take into consideration whether the killing was the probable or natural consequence of the attempt to execute the purpose of going to the house. The common purpose may not have been to kill and murder, but if it was unlawful, as, for instance, to break in and steal, and in the execution of this common purpose a homicide is committed by one, as a probable or natural consequence of the acts done in pursuance of the common design, then all present participating in the unlawful common design, are as guilty as the slayer. But if the killing has no connection with the common purpose,

and did not ensue as a probable result of an attempt to execute it, then the slayer alone is responsible for the killing. .The Circuit Judge correctly charged in this connection, that "if there were two present and they were acting in concert, it matters not which one fired the fatal shot."

5. Appellant alleges error, "in not charging the jury that it is not safe to convict the defendant upon the uncorroborated statements and confessions made by the defendant, that a statement or confession made by a defendant must be taken as a whole, and such statement and confession must be solved in favor of the defendant, giving to the defendant the benefit of any reasonable doubt." This exception is not tenable. As a matter of fact, the record before us shows that the Circuit Judge charged expressly as follows: "The law says it is never safe to convict upon the uncorroborated statements of a defendant." His Honor doubtless had in mind what is sometimes said to be the rule as to the uncorroborated statements of an *accomplice.* The defendant has no ground for complaint here. The jury are the sole judges as to the weight or sufficiency of the admissions or statements of a defendant as of any other testimony tending to prove the charge against him.

6. It is finally contended that the Circuit Judge violated article 5, section 26, which declares that "Judges shall not charge juries in respect to matters of fact." The sixth exception is as follows: "Because his Honor erred in charging upon questions of fact, to wit: 'Now, in this case, the State relies upon the admissions of the defendant, and also a chain of circumstances which is introduced for the purpose of corroborating the statement of the defendant. Now, you will first take into consideration, did the defendant make a statement which would lead you to believe that he was in that house, under what circumstances was he in that house, and from the fact that he was there, and the bullet holes appearing in the wall, as detailed here by the witnesses. Now, what do the circumstances

satisfy you? you have heard the witnesses detail the fact that shortly after the shooting was heard in that house, they went in and found the prostrate form of Capt. Blassingame, and after some information, the policeman proceeded to the house where this boy was staying, to his mother's house, and there found him shot. What does that circumstance satisfy you? Do you accept the theory of the State, that while in that house he resisted, and while resisting, both parties shooting, he fired the fatal shot, and in that encounter got shot himself, and retreated to his home? Does that satisfy you that he was in that house? Does that satisfy you that he participated in the murder of Capt. Blassingame, in the killing of Capt. Blassingame? If so, then you would join the circumstances together. Do the facts that the State has proved satisfy you that the deceased, John H. Blassingame, was murdered, and did the defendant do it?' " This exception does not do justice to the Circuit Judge, since from the form of the exception one would imagine that he charged connectedly, as specified in the exception; whereas, as matter of fact, the exception is made up of sentences found here and there in the charge. The Judge's charge is set out in the official report of this case, and reference may be had thereto. We presume the appellant meant to cluster in one exception what he regarded as the objectionable sentences and parts of sentences in the charge as being "in respect to matters of fact." Taking the charge as a whole, however, we are impressed that this exception must be sustained. The Circuit Judge does charge the jury "in respect to matters of fact."

In *Norris* v. *Clinkscales*, 47 S. C., 522, this Court, speaking by Judge Benet, acting Associate Justice, said: "Any direct reference to the testimony in charging a jury, any expression as to what is in evidence, any remark that would amount to a stating of the testimony, in whole or in part, is absolutely prohibited." And on page 523, the Court says: "We are clearly of the opinion that under section 26, as it now reads, a Judge may, in declaring the law applicable to the

case, base that law upon hypothetical findings of fact by the jury, and instruct the jury that, if they believe so and so from the evidence they have heard, then such and such will be the legal result. In so doing, if he be careful not to repeat any of the testimony, nor to intimate, directly or indirectly, what is in evidence, he will be chargeable neither with stating the testimony nor with charging in respect to matters of fact." The careful and learned Judge who tried this cause was, perhaps, lead into the error complained of by the following language at page 517 of the case cited: "It would seem, also, that a Judge would not be violating the constitutional inhibition, if he in his charge repeated the testimony as to undisputed facts or admitted facts, or stated their legal effect, or pointed out the different conclusions which might be drawn from them, or the inquiries they would naturally give rise to." In the case of *State* v. *Aughtry*, 49 S. C., 294, this language is quoted with approval by Mr. Justice Pope in the opinion prepared by him, but is criticised and disapproved in the separate opinion by Mr. Justice Jones. This Court has not heretofore expressly ruled on this point, as the language used and the point in controversy and facts in the cases *supra* indicate. In the case at bar, the State relied upon statements proven to have been made by the defendant and circumstantial evidence. The defendant, relying on his plea of not guilty, offered no testimony whatever. The Judge, perhaps, felt at liberty to refer to the undisputed facts in evidence, or rather to the evidence for the State, as to which defendant offered nothing in contradiction. In this, however, he erred. This Court would probably hold it harmless error for a Circuit Judge in his charge to refer to or mention an *admitted* fact, since no one could be injured by a statement of what he conceded to be a verity. But a wide distinction exists between evidence admitted to be true and evidence as to which nothing is offered in contradiction. A defendant by his plea of not guilty disputes every fact relied on for his conviction. He has the right, if he chooses, to rely on the jury not to be-

lieve the testimony offered against him, or to draw from the evidence adduced against him inferences of fact consistent with his innocence, or inferences of fact insufficient to establish his guilt beyond a reasonable doubt. The jury are the sole judges as to what fact has been proven, as well as the value to be attached to any proven fact. A judge, therefore, invades the jury's province when he charges them in respect to matters of fact, even though the facts or testimony is undisputed, in the sense that no evidence is offered to contradict the same. Having reached this conclusion, nothing is left us but to enforce the constitutional mandate, and remand the case for a new trial.

The judgment of the Circuit Court is reversed, and the case is remanded for a new trial.

MR. JUSTICE POPE. I have been able to concur in the result in this case, but I am not prepared to indorse all the limitations upon a Circuit Judge in his charge to the jury. While the Constitution inhibits a charge by the Circuit Judge upon the facts, still it requires him to charge the law; "but he shall charge the law," is the language. To do this, he must present the law that is to govern in the concrete case. Frequently it may happen that this can only be done by referring to some admitted facts. The two parts of this sentence in the Constitution must be construed together, so as to give effect to the whole. I greatly fear that it is not at all times remembered that this provision of the Constitution is composed of two parts. Some of the expressions of Mr. Justice Jones in this opinion, on this subject, are *obiter dicta*, and, therefore, strictly, did not demand this reference to them on my part; yet, in the abundance of caution, I have thus expressed myself.